**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THOMAS E. BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-160-JHP-TLW |
| ) | |
| UNION FIDELITY LIFE INSURANCE ) | |
| COMPANY, A Foreign Insurance ) | |
| Company, ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is Defendant Union Fidelity Life Insurance Company's Motion for Summary Judgment and Brief in Support [Doc. Nos. 32 and 33], Plaintiff Thomas E. Baker's Response in Opposition [Doc. No. 46], and Defendant's Reply to Plaintiff's Response [Doc. No. 48]. For the reasons stated herein, Defendant's Motion for Summary Judgment is hereby **DENIED**.

## Background

The Plaintiff, Thomas E. Baker, is an attorney, practicing in the area of insurance litigation in Oklahoma. On May 4, 2006, Baker was diagnosed with cancer following a lymph node biopsy conducted in Tulsa, Oklahoma. Baker initially obtained coverage under a Cancer Benefit Policy issued by the Defendant Union Fidelity Insurance Company (hereinafter "Union Fidelity") through a policy issued to Baker's father in 1976. In 1981, when Baker was no longer eligible under his father's policy, he acquired his own Cancer Benefit Policy with Union Fidelity.

The policy states in pertinent part:

> **Notice of Claim**: Written notice of claim must be given to us within thirty (30) days after the occurrence or commencement of any loss covered by this Policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of you to us at our Home

1

>Office, Trevose Pennsylvania, or to any other of our authorized agents with information sufficient to identify you, shall be deemed notice to us.
>
>**Claims Forms:** We, upon receipt of notice of claim, will furnish you such forms as are usually furnished by us for filing proof of loss. If such forms are not furnished within fifteen (15) days after the giving of such notice, you shall be deemed to have complied with the requirements of this Policy as to proof of loss upon submitting, within the time fixed in the Policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which the claim is made.
>
>**Proofs of Loss:** Written proof of loss must be furnished to use at our said Office in case of claim for loss of which this Policy provides any periodic payment contingent upon loss within ninety (90) days after the termination of the period for which we are liable and in case of claim for any loss within ninety (90) days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claims if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.
>
>**Time of Payment of Claims:** Benefits payable under this Policy for any loss, other than loss fro (sic) which this Policy provides any periodic payment will be paid immediately upon receipt of due written proof of loss. Subject to due written proof of loss, all accrued benefits for loss for which this policy provides periodic payments will be paid monthly and any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of written proof.
>[Doc. No. 33-5]

Union Fidelity's records suggest that on May 24, 2006, Baker called the company and requested a claims form. [Doc. No. 33-4] Baker does not remember how he contacted the company after he was diagnosed, but believes he sent a letter. [Doc. No. 33-2] Union Fidelity contends on May 25, 2006, it sent a letter with claims form instruction and a claim form to Baker. The document stated in bold letters across the top "**INSTRUCTIONS FOR FILING A CLAIM**:" and instructed

2

that in order to "help speed the processing of your claim" the form must be complete, the authorization **must** be completed signed and dated, and the attending physician was to complete and sign his/her portion of the form. [Doc. No. 33-6] The form then asked that the person completing it "please submit the following information <u>**along**</u> with your <u>**fully completed claim form**</u>: . . . **For Cancer coverage:** Attach a copy of the itemized bills." [Doc. No. 33-6] Baker states he received the claim form sent by Union Fidelity but denies ever receiving the instruction form Union Fidelity contends it sent along with it. [Doc. No. 46-2] Baker contends that on or about June 22, 2006, he mailed to Union Fidelity the completed claims form which included the personal information requested, a statement and signature from his attending physician, Dr. Langerak, and a signed version of the authorization to release of health information he originally received from Union Fidelity. [Doc. No. 46-2] Union Fidelity states it received the completed claims form and medical authorization on August 16, 2006.   On August 30, 2006, and on October 2, 2006, Union Fidelity states it sent correspondence to Baker requesting he submit itemized medical bills and other documents needed to process his claims. [Doc. Nos. 33-8 and 33-9] The itemized medical bills were to "have the numeric procedure codes to assure proper payment." [Doc. No. 33-8] Baker states he does not recall ever receiving these letters. [Doc. No. 46-2] Union Fidelity claims it sent another letter to Baker on October 17, 2010, and "specifically requested that he submit a bill for the administration of anesthesia." [Doc. No. 33] Union Fidelity states it received no response from Baker until July, 2007, when he called Union Fidelity and sent a letter on July 30, 2007, asking what he must do in order to get the claim paid.

On August 2, 2007, Union Fidelity wrote a letter to Baker advising him that the company had used the medical authorization to request medical information from Dr. Langerak, but they did

3

not request any medical bills from him. Union Fidelity stated "[i]t is not our policy to request medical bills from providers and it is only done under very specific circumstances." [Doc. No. 33-11] The company advised Baker that his claim was a "valid claim" and again requested him to submit itemized bills for any cancer treatment and to "be sure that the doctor bills have the 5-digit procedure codes known as CPT codes for each charge." [Doc. No. 33-11] Another letter was sent from Union Fidelity to Baker on September 18, 2007, enclosing a duplicate copy of Baker's policy and copies of the letters the company had previously sent. [Doc. No. 33-12] The company again made a request for Baker to submit itemized bills with the numeric procedure codes in order for his claims to be processed.

As of January, 2008, no payment had been received as to any of Baker's medical bills. [Doc. No. 46-2] On January 28, 2008, Baker wrote a letter to Union Fidelity providing the company with certain medical bills and "another signed authorization for you to obtain any other bills, billing information, or medical records pertaining to this treatment." [Doc. No. 33-13] On February 15, 2008, a check was issued to Baker in the amount of $890.00 as payment of the policy benefits. In October, 2008, Baker filed this suit against Union Fidelity in the District Court of Creek County, Oklahoma. The Defendants removed the action to the Federal District Court for the Northern District of Oklahoma.

## DISCUSSION

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making the summary judgment determination, the Court examines the factual record and draws

reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id*. at 249.

### I.      AMBIGUITY IN THE TERMS OF THE POLICY

Initially this Court notes that, because this is a diversity case, Oklahoma insurance law applies. *See Zurich American Ins. Co. v. O'Hara Reg'l Ctr. for Rehabilitation,*, 529 F.3d 916, 920 (10th Cir.2008). Under Oklahoma law, if the terms of a contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." *Roads West, Inc. v. Austin,* 91 P.3d 81, 88 (Okla.Civ.App.2004). In this case, the Plaintiff asks the Court to find the claims forms and proof of loss provisions of the policy to be ambiguous.

Whether an insurance contract provision is ambiguous is a question of law to be determined by the court. *Max True Plastering Co., v. U.S.F. & G. Co.,* 1996 OK 28, ¶ 20, 912 P.2d 861, 869. "The test to be applied in determining whether a word or phrase is ambiguous is whether the word or phrase is susceptible to two interpretations on its face from the standpoint of a reasonably prudent lay person." *Gutkowski v. Oklahoma Farmers Union Mut. Ins. Co.*. 2008 OK CIV APP 8, ¶8, 176 P.3d 1232, 1234, *citing Max True*, 912 P.2d at 869. "This Court will not indulge in forced or constrained interpretations to create and then construe ambiguities in insurance contracts." *Id.*

The Plaintiff contends the Claims Forms and Proof of Loss clauses in the insurance contract

are ambiguous because the language of the policy only requires that a written proof of loss be furnished to the Defendant's office in order for the claim to be processed and timely paid. However, the actual claims form, included an instruction form which added additional requirements such as completion of a medical authorization and submission of itemized bills in order for the claim to be processed. The Defendant contends that the requirement that itemized bills be submitted is part of the proof of loss requirement under the policy.

In deciding whether the contract is ambiguous, the Court looks to the language of the entire contract. *Pitco Production, Co., v. Chaparral Energy, Inc.*, 2003 OK 5, 63 P.3d 541. This Court has reviewed the copy of the policy submitted by Union Fidelity and nowhere in the language of the policy does Union Fidelity require the policy holder to submit itemized medical bills or numeric procedure codes to process a claim or receive payment of a claim. The policy states that once notice of a claim is given the company will furnish the policy holder with "such forms as are usually furnished by us for filing proof of loss." [Doc. No. 33-5]  Although the policy holder has no reason to know what forms are "usually furnished" by Union Fidelity, a reasonable person in the position of the policy holder[1] would interpret the "Claims Forms" clause to say that Union Fidelity will provide the necessary documents to complete and return in order to comply with the proof of loss requirements. The Policy also provides an explanation as to what happens if the documents are not sent within 15 days of the company's notice of the claim. [Doc. No. 33-5] This language supports the Plaintiff's interpretation that the policy **only** requires completion of the Claims Form and not

---

[1]"Under the 'reasonable expectations doctrine,' the meaning of ambiguous or uncertain language in an insurance policy is not what the drafter intended it to mean; it is what a reasonable person in the position of the insured would have understood it to mean." *Duensing v. State Farm Fire and Cas. Co.*, 2006 OK CIV APP 15, ¶20, 131 P.3d 127,134.

submission of medical bills or other documentation in order for payment of a claim.

However, in the "Proofs of Loss" clause, the language of the policy alternates between using the phrase "written proof of loss must be furnished" and the policy holder must "furnish" or "provide proof." The language that the policy holder is to furnish such "proof as soon as reasonably possible" is broader than the phrase "proof of loss" and could be construed to place a duty on the policy holder to "provide proof" through obtaining additional documents.

The policy uses varying language and provides no definition for "proof of loss" or the "proof" referred to in the policy, and at no point makes clear that United Fidelity can, or will request the policy holder to obtain other documents such as itemized medical bills. Further, when looking at the proof of loss submitted to the policy holder, additional confusion is created because it imposes additional requirements in order to obtain payment of the claim. This Court finds these policy provisions, read together, to be ambiguous because the policy is susceptible to at least two plausible meanings.

This Court finds that because a reasonably prudent person could interpret the clauses in the Union Fidelity contract in more than one way, and the issue regarding the contract's meaning and whether the Plaintiff's interpretation of the contract was reasonable becomes a question for the jury. *See American Modern Select Ins. Co. v. Crum*, 2009 WL 1561554, *2 (N.D. Okla. June 3, 2009)(unpublished)("The Court finds that a reasonably prudent layperson could interpret the Roofing Exclusion in either manner and therefore finds that a jury shall be allowed to consider extrinsic evidence and discern its meaning.") citing *Altshuler v. Malloy*, 1963 OK 243, 388 P.2d 1, 4("We have consistently held that where the meaning of an ambiguous written contract is in dispute, evidence of extrinsic facts are admissible, and construction of contract then becomes a mixed

question of law and fact and should be submitted to a jury under proper instructions.").

## II. BAD FAITH

An insurer has an implied duty to deal fairly and act in good faith with its insured and to not deprive the policy holder of the benefits of the policy. *Christian v. American Home Assurance Co.,* 1977 OK 141, ¶¶ 25-26, 577 P.2d 899, 904-05. "An insurer's violation of this duty gives rise to an action in tort for which consequential and punitive damages may be sought." *Pitts v. West American Ins. Co.*, 2009 OK CIV APP 64, ¶7, 212 P.3d 1237, 1240. (Internal citations omitted) "Tort liability for breach of that duty arises where there is a clear showing that the insurance company unreasonably and in bad faith withheld payment of the claim of the insured." *Hale v. A.G. Ins. Co.,* 2006 OK CIV APP 80, ¶ 10, 138 P.3d 567, 572. And insurer is not foreclosed from deying a claim, resisting payment, or litigating any claim to which the insurer has a legitimate defense. *Buzzard v. Farmers Ins. Co.,* 1991 OK 127, ¶ 13, 824 P.2d 1105, 1109. "Oklahoma law recognizes that there may be disputes between insurer and insured regarding a variety of matters, including coverage, cause and amount of loss, and breach of policy conditions." Pitt, 2009 OK CIV APP 64, ¶9, 212 P.3d at 1240, citing *McCorkle v. Great Atlantic Ins. Co.,* 1981 OK 128, ¶ 22, 637 P.2d 583, 587. "[T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy...." *Id.*

In this case Baker alleges that Union Fidelity failed to properly investigate his claim by requiring him to submit itemized medical bills instead of using the medical authorization he provided. He also claims the company improperly delayed payment of his claims for approximately 21 months despite his compliance with the terms of the policy in completing and returning the proof

of loss.

In a bad faith claim for failure to investigate a claim the main issue is: "what did the insurance company know, or what should it have known at the time the insured requested payment under the applicable policy, *i.e.,* whether the insurer had a justifiable, reasonable basis to withhold payment when the insured requested the carrier to perform its contractual obligation." *Pitts,* 2009 OK CIV APP 64, ¶8, 212 P.3d at 1240, citing *Hale*, 2006 OK CIV APP 80, ¶ 10, 138 P.3d at 572-53.

The Defendant initially contends that since the Plaintiff cannot succeed on his breach of contract claim, no claim for a breach of the duty of good faith and fair dealing is available. The Court notes Plaintiff's argument that the Defendant did not pay the amount authorized under the policy after bills were submitted, giving rise to a breach of contract claim. The Plaintiff makes occasional statements in his response brief such as "UFLIC has failed to pay monies due Plaintiff Baker under the Policy." [Doc. No. 46, pg. 3] However, in the same brief, the Plaintiff states "this case is not about whether the policy provides coverage, but whether the insurer using the proof of loss form submitted by Mr. Baker could investigate, evaluate, and timely pay benefits allowed under the policy." [Doc. No. 46, pg. 6] The Defendant, in its briefing, also makes general assertions that the amount paid to Baker was not "unreasonable" and the payment was made "in accordance with the Policy's Schedule of Benefits" but makes no effort to support these statements with any specific argument. Without more, this Court cannot make any finding as to whether the amounts paid to Baker were within the terms of the policy.

Baker does argue, however, the Defendant breached its obligations to him by requiring him to submit itemized bills instead of obtaining them as part of its duty to investigate and by delaying payment of his claims for approximately 21 months. The Policy states "payment will be made

9

immediately upon receipt of due written proof of loss." [Doc. No. 33-5] If a jury determines that Baker complied with the proof of loss provisions of the policy by submitting the forms provided to him by the company, then it is also likely a jury will decide that Union Fidelity breached the contract in failing to "immediately" provide payment of Baker's claims upon receipt of the completed forms. This too is a question for the jury. As such, Baker's claims of bad faith, are not precluded for lack of a breach of contract claim.

Union Fidelity also claims that there are no material facts to support submission of Baker's bad faith claim to the jury. Baker claims Union Fidelity's failure to use his signed medical authorization to obtain his medical bills is a failure of its duty to investigate and its delay in paying his bills is a breach of its duty to deal fairly and in good faith. "[W]hen a bad faith claim is premised on inadequate investigation, the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." *Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.,* 71 F.3d 335, 345 (10th Cir. 1995)

In this case, Baker contends the a more thorough investigation would have led to relevant evidence and material facts, *i.e.*, itemized medical bills which would have resulted in payment of his claim. Although Union Fidelity now argues that the medical authorization they received from Baker did not entitle them to obtain medical bills from his providers, that is not the position the company originally took with Baker. In its letter to Baker dated, On August 2, 2007, Union Fidelity advised Baker that "[i]t is not our policy to request medical bills from providers and it is only done under very specific circumstances," suggesting it had the ability to request medical bills, but chose not to as a matter of policy. [Doc. No. 33-11] Neither party disputes that even if the medical authorization did not grant Union Fidelity access to Baker's medical bills, it had the ability to send

10

or craft an authorization that would allow it access to those documents and request Baker to sign a second authorization.

The Oklahoma Supreme Court has held that "if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *Badillo v. Mid-Century Ins. Co.,* 2005 OK 48, ¶ 28, 121 P.3d 1080, 1093 (quoting *McCorkle,* 1981 OK 128 at ¶ 21, 637 P.2d at 587). This Court finds there is sufficient evidence to allow a jury to determine whether Union Fidelity's conduct in investigating Baker's claim and delaying payment was a breach of its duty to deal fairly and in good faith with its insured.

## CONCLUSION

For the foregoing reasons this Court hereby **DENIES** Defendant's Motion for Summary Judgment. This Court finds the Union Fidelity Policy issued to Baker to be ambiguous. The issue of construction of the contract will be submitted to the jury with appropriate instructions. The jury will be allowed to hear and/or review extrinsic evidence as appropriate in making its determination.

**IT IS SO ORDERED**.

James H. Payne
United States District Judge
Northern District of Oklahoma

11